IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FRANCIS JOSEPH GOLLA,**

        **Plaintiff,**

    v.

**OFFICE OF THE CHIEF JUDGE OF COOK COUNTY and COOK COUNTY, ILLINOIS,**

        **Defendants.**

**Case No. 11 C 8149**

**Judge Harry D. Leinenweber**

## MEMORANDUM OPINION AND ORDER

This case concerns Plaintiff Joseph Golla's ("Golla") reverse discrimination claim against the Office of the Chief Judge of Cook County and Cook County itself (collectively, the "Defendants"). Before the Court is Defendants' Motion for Summary Judgment [ECF No. 132]. For the reasons stated herein, the Motion is granted.

### I. BACKGROUND

The following facts are undisputed unless otherwise indicated. Golla is a white male who was employed by the Office of the Chief Judge of Cook County (the "Office") for approximately twenty years. Golla's employment with the Office began in 1983. Although the Office terminated Golla's employment on March 16, 1995, Golla was reinstated less than a

year later as the result of a Settlement Agreement resolving claims that the Office had discriminated against Golla based on a medical condition. Pursuant to the Settlement Agreement, Golla was placed into the position of Law Clerk I at a Grade 14 pay level. In 2004, Golla was transferred to the Social Services Department. According to his personnel record, Golla retained the title of "Law Clerk I" and continued receiving Grade 14 pay until he resigned from the Office on May 31, 2013.

Prior to his transfer to Social Services, Golla's main responsibility was conducting legal research. In Social Services, however, Golla carried out administrative duties, such as data entry, intake processing, case initialization, and report routing. These duties involved SCERTS, intake forms that must be completed for defendants who fail to report to Social Services as ordered.

One of Golla's colleagues in Social Services was Deotis Taylor ("Taylor"), an African American male who initially began working for the Office in 1978. In 1999, Taylor resigned to run for state senate. The parties dispute Taylor's status at the time of his 1999 resignation. According to Defendants, Taylor was a Jury Room Manager receiving Grade 20 pay. According to Golla, Taylor was receiving Grade 22 pay and served as a Jury Room Manager, a Probation Officer 4, and possibly a Community

Liaison. According to his personnel record, Taylor was a Jury Room Manager as of July 5, 1998 and was receiving Grade 22 pay.

In 2005, Taylor reapplied for employment with the Office. Ultimately, Bruce Wisniewski ("Wisniewski"), the Office's human resources administrator, informed Taylor that he would be assigned to Social Services. The parties disagree as to what role Taylor assumed upon his return. According to Defendants, and as reflected on his personnel record, Taylor returned to the Office in 2005 as a Legal Systems Analyst. According to Golla, Taylor had no formal job title upon his return. The parties do not dispute that Taylor was receiving Grade 22 pay.

Both Golla and Taylor were listed in the Social Services staff directory under the title of Administrative Assistant. Defendants claim that, despite having the same job title in the directory, Golla and Taylor had different job duties, although Taylor's duties were still administrative in nature. Defendants have also submitted evidence that other African American and Caucasian employees in the Social Services Department performed administrative and clerical duties similar to Golla's, but at a lower pay grade.

Vanessa Whitehead ("Whitehead"), who is African American, is the Deputy Director of Management Services for the Social Services Department and supervised both Golla and Taylor. However, the parties dispute whether Whitehead had authority to

set pay grades for Social Services employees. When asked at deposition what her role was with respect to determining employee pay levels, Whitehead replied: "None at all." (Whitehead Dep., Ex. D. to Defs.' L.R. 56.1 Stmt., ECF No. 133-5, at 7:23–8:1.)

At some point in 2009, Golla learned that Taylor received pay above Grade 14. On May 29, 2009, Golla filed a discrimination complaint with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC"). The EEOC closed the case on August 18, 2011 and issued Golla a Right to Sue letter. Three months later, on November 15, 2011, Golla filed the instant case. A single claim under Title VII remains, in which Golla claims that the pay disparity between him and Taylor is the result of racial discrimination. When asked to state the basis for his race discrimination claim, Golla replied:

> Deotis and I did predominantly the same or certainly similar work. I have a high school education. I have a college education. I have a law degree. I have a law license. I have 30 years of legal experience. He has nothing equivalent to that and he was being paid — we were both with Cook County approximately the same length of service, and he was being paid substantially more, eight grades more than I was for doing the exact same or similar work. And the only other difference is he is African-American and I am Caucasian.

(Golla Dep., Ex. B to Defs.' L.R. 56.1 Stmt., ECF No. 133-3, at 43:15–44:2.)

At deposition, Golla was also asked whether anyone at the Office made racial comments to him, to which he responded:

> No. You know, nothing direct racial. Now, Vanessa had on numerous occasions said that all my life people have been standing in my way, and they all looked exactly like you. Is that racial? Is that gender? Is that age? That's what she would say, you are a nobody, you are a nothing, you are not an attorney. She would say it repeatedly, loudly, and to anybody who was around her that would hear it. But is that racial? No. It's demeaning. It's disgusting. It's degrading. But no, not directly racial. No nooses hanging anywhere.

(*Id.* at 44:3–17.)

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those that affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party may meet its burden by showing "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). If the moving party satisfies its initial burden, the non-moving party must demonstrate with evidence "that a triable issue of fact remains on issues for which [it] bears the burden of proof." *Knight v. Wiseman,* 590 F.3d 458, 463–64 (7th Cir. 2009).

The judge's role at summary judgment is not to make credibility determinations or weigh the evidence. *Washington v. Haupert,* 481 F.3d 543, 550 (7th Cir. 2007). In determining whether a genuine issue of material fact exists, the Court construes all evidence in the light most favorable to the nonmoving party. *Bellaver v. Quanex Corp.,* 200 F.3d 485, 491-92 (7th Cir. 2000).

### III. <u>ANALYSIS</u>

Title VII prohibits employers from discriminating against "any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish discrimination under Title VII directly or indirectly. *Atanus v. Perry,* 520 F.3d 662, 671 (7th Cir. 2008). Defendants argue that Golla cannot show discrimination under either method.

#### A. Direct Method

Under the direct method of proof, a plaintiff must present "direct or circumstantial evidence that creates a 'convincing mosaic of discrimination' on the basis of race." *Winsley v. Cook Cnty.,* 563 F.3d 598, 604 (7th Cir. 2009) (quoting *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 737 (7th Cir. 1994)). Circumstantial evidence in employment discrimination cases typically falls into one of three categories:

- 6 -

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; [or] (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

*Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 812 (7th Cir. 2007) (citation omitted). A plaintiff may survive a motion for summary judgment based solely on circumstantial evidence only if the evidence "points directly to a discriminatory reason for the employer's action." *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 675 (7th Cir. 2012) (citation and internal quotations omitted).

Absent in this case, Defendants argue, is any evidence that Golla's Grade 14 pay was based on his race. Golla does not appear to dispute that direct evidence of discrimination is lacking. Instead, he argues that discrimination is established based upon "an abundance of circumstantial evidence." (Pl.'s Resp., ECF No. 143, at 13.) The key piece of evidence on which Golla relies is Whitehead's comment to him: "[A]ll my life people have been standing in my way, and they all looked exactly like you." (Golla Dep., Ex. B to Defs.' L.R. 56.1 Stmt., ECF No. 133-3, at 44:3–17.) According to Golla, this comment, in the broader factual context of this case — in which the Office

never investigated the reasons for the pay disparity — could lead a reasonable jury to conclude that the pay disparity between him and Taylor was based on race.

Pieced together and viewed in the light most favorable to Golla, the circumstantial evidence on which Golla relies does not create a "convincing mosaic" from which a reasonable jury might infer discrimination. There are several problems with Whitehead's statement. In general, isolated remarks in the workplace are insufficient to establish that a particular action was motivated by discriminatory animus. *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006). This rule gives way, however, when a remark is made by a decision maker around the time of, and in reference to, the adverse employment action of which a plaintiff complains. *Id.* Here, Golla has not presented evidence sufficient to support that Whitehead was the decision maker as to pay grades. At deposition, Whitehead testified that she played no role in determining employee pay grades. To counter this testimony, Golla offers excerpts from Wisniewski's deposition in which he (1) states that a person with a law license would not be entitled to a Grade 16 position, but "would have to be recommended by the person that supervised them" and (2) guesses that the Director of Social Services and all of Golla's supervisors would have set his previous pay grades. (Wisniewski Dep., Ex. E to Defs.' L.R. 56.1 Stmt., ECF

No. 133-6, at 32:7-15, 109:23-110:8.) Wisniewski, however, goes on to say that he lacks personal knowledge as to who set Golla's pay at Grade 14. (*Id.* at 110:9-12.) A reasonable jury could not conclude that Whitehead was the decision maker based on these statements.

Even assuming that Whitehead set pay grades — which is not supported by the record — there is no evidence that she made her comment around the time the pay disparity arose, or in reference to it. Moreover, there is nothing inherently discriminatory about Whitehead's remark and no evidence to suggest that she was referring to Golla's race. Indeed, in pondering the statement at his deposition, Golla stated: "[I]s that racial? No. It's demeaning. It's disgusting. It's degrading. But no, not directly racial." (Golla Dep., Ex. B to Defs.' L.R. 56.1 Stmt., ECF No. 133-3, at 44:3-17.) Because there is no apparent connection between Whitehead's allegedly discriminatory comment and the pay disparity, Golla fails to establish reverse racial discrimination under the direct method of proof.

### B. Indirect Method

Under the indirect method of proof, a plaintiff in a reverse discrimination case must establish a *prima facie* case of racial discrimination under a modified version of the *McDonnell Douglas* test. *See, Mills v. Health Care Serv. Corp.,* 171 F.3d

450, 457 (7th Cir. 1999). Specifically, the plaintiff must show the following:

> (1) [B]ackground circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against whites or evidence that there is something 'fishy' about the facts at hand; (2) that she suffered an adverse employment action; and (3) that she was treated less favorably than similarly situated individuals who are not members of the protected class.

*Good*, 673 F.3d at 678 (citation and internal quotations omitted). If a plaintiff satisfies his or her initial burden, the burden then shifts to the defendant to present a legitimate, nondiscriminatory reason for its decision. *Id.* at 679. If the defendant does so, the burden returns to the plaintiff to prove that the defendant's explanation was mere pretext. *Id.*

Defendants argue that Golla cannot establish the first or third elements of a reverse discrimination claim. The Court begins by addressing the third element. This prong of the analysis determines whether "all things are in fact equal" and "eliminate[s] other possible explanatory variables" besides race. *Id.* at 675. Determining whether an employee is similarly situated requires the Court to undertake a "'flexible, common-sense' evaluation of the relevant factors." *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012) (quoting *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007)). These factors typically include whether the comparators (1) "dealt with the same supervisor,"

(2) "were subject to the same standards," and (3) "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (quoting *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008)) (internal quotations omitted). "Whether a comparator is similarly situated is usually a question for the fact-finder, and summary judgment is appropriate only when no reasonable fact-finder could find that plaintiffs have met their burden on the issue." *Id.* at 846–47 (citation and internal quotations omitted).

Here, Golla has presented sufficient evidence from which a reasonable jury might conclude that he and Taylor were similarly situated. Golla notes that Whitehead was supervisor to both him and Taylor, (Pl.'s L.R. 56.1 Stmt. of Addt'l Facts, ¶¶ 10, 14), that the staff directory listed both men as Administrative Assistants (even though their official job titles differed), (*id.* ¶ 1), and that the completion of SCERTS was an "all day job" for both Golla and Taylor, who testified about the specific SCERTS-related duties they performed, (*id.* ¶ 30; *see*, Pls.' Resp., ECF No. 143, at 9). This constitutes sufficient evidence from which a jury could find that Golla and Taylor were similarly situated.

The first element, however, is more problematic. The contours of the first element — background circumstances — "are

not precise." *Mills,* 171 F.3d at 457. To establish background circumstances, a plaintiff must demonstrate "that a particular employer has reason or inclination to discriminate invidiously against whites" or provide evidence that "there is something fishy about the facts at hand." *Phelan v. City of Chi.,* 347 F.3d 679, 684 (7th Cir. 2003) (quoting *Mills,* 171 F.3d at 455) (internal quotations omitted). In *Mills,* background circumstances included the fact that women dominated supervisory positions and, over a seven-year period, nearly all promotions were awarded to women. In *Hague,* background circumstances included the fact that an African American supervisor fired and replaced five white employees with four African American ones. *Hague v. Thompson Distribution Co.,* 436 F.3d 816, 822 (7th Cir. 2006). In *Lupescu,* the court found sufficient background circumstances based on "the predominance of African-American supervisors plus evidence of a racially charged environment and [a] lack of evidentiary support for [plaintiff's] termination." *Lupescu v. Napolitano,* 700 F.Supp.2d 962, 976 (N.D. Ill. 2010). Ultimately, background circumstances must "support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Mills,* 171 F.3d at 455 (citation and internal quotations omitted).

The background circumstances Golla recites can be broken down into four categories. First, Golla states that the

supervisors responsible for setting pay grades, Whitehead and Jesus Reyes ("Reyes"), the former director of the Social Services Department, are minorities. Second, Golla indicates that there is no evidence supporting Taylor's Grade 22 pay, and that the Office failed to conduct a job audit or otherwise investigate the pay disparity between him and Taylor, which was Cook County policy. Third, Golla contends there was a "fair suggestion that Whitehead had racial animus against Whites," (Pl.'s Mem., ECF No. 143, at 5) — namely, her comment that people who "looked like" Golla had been standing in her way all her life. Finally, Golla questions various aspects of Taylor's history with the Office, such as the fact that "his job title and work history were vague and ambiguous," and that there was no written job description for Taylor's role as a Legal Systems Analyst. (*Id.*)

The Court first addresses Golla's contention that Whitehead and Reyes set pay grades. The Court has already concluded that Wisniewski's deposition testimony does not create a triable issue of fact as to whether Whitehead set pay grades. The additional evidence Golla relies on here fares no better. One piece of evidence is simply a statement from Golla's affidavit that "Jesus Reyes is Hispanic and was at all relevant times the Director of the Social Services Department." (Golla Aff., Ex. B to Pl.'s L.R. 56.1 Stmt., ECF No. 142-2, ¶ 6.) Another is the

quotation from Golla's deposition reciting the comment that Whitehead made to him. (Golla Dep., Ex. B to Defs.' L.R. 56.1 Stmt., ECF No. 133-3, at 44:7-9.) Unfortunately for Golla, this evidence does little to rebut Whitehead's deposition testimony in which she disavows any involvement in setting pay grades. The Court finds Golla's evidence insufficient to create a triable issue of fact as to whether Whitehead and Reyes set pay grades.

The Court next examines the second background circumstance Golla identifies — the lack of any reasonable basis for Taylor's Grade 22 pay and the Office's failure to investigate the pay disparity between Taylor and Golla. Golla claims that it was the policy of Cook County to conduct job audits to determine appropriate pay levels, and that it would be prudent to determine pay grades based on whether employees shared similar duties. (Pl.'s L.R. 56.1 Stmt., ECF No. 142, ¶¶ 23-24.) However, Wisniewski responded "I've heard of it" when asked whether job audits were Cook County policy, and stated "I don't know if it would be prudent" when asked whether a job audit should have been conducted in Golla's case. (Ex. E to Defs.' L.R. 56.1 Stmt., ECF No 133-6, at 35:14-17, 46:8-16.)

What remains then, is some evidence suggesting that neither Wisniewski nor Whitehead knew what experiences or duties justified Taylor's pay grade, (see, Pl.'s L.R. 56.1 Stmt. of

Addt'l Facts, ECF No. 142, ¶¶ 9, 12), Whitehead's comment, and various facts related to Taylor's employment, such as the apparent lack of a written job description for his position. Defendants' main objection to this evidence is that much of it revolves around a single African American employee — Taylor. For instance, there is no evidence, as in *Mills* or *Hague*, that there was a pattern of promoting a certain race or the replacement of a set of white employees with African American ones. Taken together and construed in the light most favorable to Golla, the Court finds the evidence presented insufficient to "support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Mills,* 171 F.3d at 455 (citation and internal quotations omitted). Because Golla has failed to present evidence establishing the first element of a reverse racial discrimination case, summary judgment in favor of Defendants is appropriate.

Even assuming that Golla had presented evidence sufficient to establish a *prima facie* case of reverse racial discrimination, Defendants have come forward with a legitimate, nondiscriminatory reason for the pay disparity — Golla and Taylor's pay grades were already established at different levels when they entered the Social Services Department, and employees retained the pay grades they had previously achieved. (*See,* Defs.' L.R. 56.1 Stmt. ¶¶ 14–15, 29, 33.) Under the Settlement

Agreement, Golla's employment with the Office was reinstated in 1996 at Grade 14 pay. (*See,* Ex. 2 to Golla Dep., Ex. B to Defs.' L.R. 56.1 Stmt., ECF No 133-3, ¶ 1.) Golla was still at Grade 14 when he transferred to the Social Services Department in 2004. Taylor, on the other hand, left the Office at a Grade 20 or 22, gained additional experience working for the Secretary of State, and was rehired into the Social Services Department in 2005 at Grade 22. (*See,* Wisniewski Dep., Ex. E to Defs.' L.R. 56.1 Stmt., ECF No. 133-6, at 72:1–13.)

Golla has not produced any evidence showing that Defendants' basis for the pay disparity — retention of previous pay grades — was pretext for racial discrimination. "Pretext . . . means a lie, specifically a phony reason for some action." *Helland v. S. Bend Cmty. Sch. Corp.,* 93 F.3d 327, 330 (7th Cir. 1996) (citation and internal quotations omitted). To show pretext, a plaintiff must establish that "(1) the employer's non-discriminatory reason was dishonest[,] and (2) the employer's true reason was based on a discriminatory intent." *Stockwell v. City of Harvey,* 597 F.3d 895, 901 (7th Cir. 2010). Pretext concerns whether an employer "honestly believes in the reasons it offers, not whether it made a bad decision." *Rand v. CF Indus., Inc.,* 42 F.3d 1139, 1145 (7th Cir. 1994) (citation and internal quotations omitted).

Even assuming Golla had set forth evidence sufficient to establish a *prima facie* case of racial discrimination, and shift the burden back to Defendants — which he has not — he has failed to show that Defendants' reason for the pay disparity was pretextual. "The argument that Taylor's and Plaintiff's pay grades were, in essence, permanent is not supported by the evidence or common sense," Golla contends, noting that a job audit was never performed to assess the pay disparity. (Pl.'s Resp., ECF No. 143, at 10.) Yet, even if Defendants' policy did not represent sound business judgment, Golla has provided no evidence suggesting that Defendants' rationale was a lie.

## IV. CONCLUSION

For the reasons stated herein, the Defendants' Motion for Summary Judgment [ECF No. 132] is granted, and the case is dismissed with prejudice.

**IT IS SO ORDERED.**

                                      Harry D. Leinenweber, Judge
                                      United States District Court

Dated: June 18, 2015